IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GAIL OPASKAR, | ) | Case No. 1:21-CV-01710 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | THOMAS M. PARKER |
| | ) | |
| 33' 1987 CHRIS-CRAFT | ) | |
| AMEROSPORT MOTOR VESSEL, *et al.*, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |

On June 23, 2021, tragedy struck on Lake Erie as three individuals – Frank Opaskar, Christopher Kedas, and Kedas's minor son – were found deceased on board *The Third Lady*, seeming to have died from a mechanical failure that caused a carbon monoxide leak.  Opaskar and the Kedases were traveling on *The Third Lady* because Frank and his wife, Gail, wanted to trade-in the vessel to Kedas's employer, South Shore Lake Erie Assets & Operations, LLC ("South Shore Marine"), and the three were taking the vessel to South Shore Marine's facility for an inspection.

Gail Opaskar now seeks to disclaim the Opaskars' ownership of *The Third Lady* at the time of the accident, claiming a right to "try title" in a petitory action governed by Rule D, Fed. Supp. Adm. R.  She contends that South Shore Marine owned the vessel based on how far into the trade-in process for *The Third Lady* the parties had gotten.  South Shore Marine has filed a counter petition, arguing that the Opaskars are the true owners.  The estates of both Kedas and his son have intervened in this proceeding, contending that the Opaskars were the owners of *The*

*Third Lady* on the day of the accident. ECF Doc. 29. Opaskar, South Shore Marine, and the estate of Christopher Kedas each filed motions for summary judgment in their favor (ECF Doc. 50; ECF Doc. 51; ECF Doc. 52); and opposition and reply briefs have been filed. Additionally, in compliance with the court's order, the parties filed supplemental briefs on the issue of admiralty jurisdiction (ECF Doc. 61; ECF Doc. 62; ECF Doc. 63).

Upon due consideration, the court finds that it *does not* have admiralty jurisdiction under Rule D over this action. And, accordingly, Opaskar's motion for summary judgment (ECF Doc. 52) must be DENIED, South Shore Marine's motion for summary judgment (ECF Doc. 50) must be DENIED; and, in light of these determinations Kedas's motion for summary judgment (ECF Doc. 51) must be DISMISSED as MOOT.

## I.      Background

### A.      Factual Background

The core facts of this action are undisputed. Frank and Gail Opaskar owned *The Third Lady* for over 30 years. ECF Doc. 52-13. In 2021, they decided to trade-in the vessel for a new one. Their adult daughter, Amanda, assisted them with that process.

In the early summer of 2021, Amanda and Gail reached out to South Shore Marine to discuss trading in *The Third Lady* and purchasing a new vessel. ECF Doc. 50 at 5; ECF Doc. 52 at 7. Christopher Kedas, a sales representative employed by South Shore Marine, worked with Amanda and Gail. ECF Doc. 50 at 5; ECF Doc. 52 at 7. After Amanda and Gail identified a new vessel they wished to purchase, on June 15, 2021, Kedas came out to see *The Third Lady*. ECF Doc. 50 at 5-6; ECF Doc. 52 at 8-9. Following Kedas's look over *The Third Lady*, the Opaskars put down an initial deposit on the new boat and a "Buyer's Quote" form was issued. ECF Doc. 50 at 6; ECF Doc. 52 at 8-9. The "Buyer's Quote" provided information on the

options available in the vessel the Opaskars were interested in, a breakdown of costs associated with the deal, and indicated that the buyer agreed to close on the sale no later than June 26, 2021. *See* ECF Doc. 55-5.

On June 17, 2021, Amanda and Gail went to South Shore Marine to discuss financing their new vessel with South Shore Marine's business manager.  ECF Doc. 50 at 9.  During this meeting, they brought *The Third Lady*'s title and attempted to give it to South Shore Marine.  But South Shore Marine declined to accept the title, informing Amanda and Gail that a mechanical inspection was first required, and Frank Opaskar, as a title owner, needed to sign the title over in front of a notary.  *Id.*

The mechanical inspection was initially scheduled for June 18, 2021.  ECF Doc. 50 at 9; ECF Doc. 52 at 11-12.  But the Opaskars wished to use *The Third Lady* one last time that weekend, as it was Father's Day.  ECF Doc. 50 at 9; ECF Doc. 52 at 11-12.  The inspection was arranged for June 23, 2021, at which time Kedas and his minor son met the Opaskars at the marina where *The Third Lady* was moored.  ECF Doc. 50 at 10; ECF Doc. 52 at 12-14.  Frank asked to accompany Kedas and his son in taking *The Third Lady* from the private marina to South Shore Marine's facility.  ECF Doc. 50 at 10; ECF Doc. 52 at 14.  Kedas was amenable and the three left the dock.  ECF Doc. 50 at 10; ECF Doc. 52 at 14.  Tragically, the three persons did not survive what was to have been a brief trip.  ECF Doc. 50-4 at 57; ECF Doc. 52-1 at 35.  By that stage, the title to *The Third Lady* had not been signed over to South Shore Marine – or anyone else.  ECF Doc. 52-13.  To the best of the court's knowledge, Frank and Gail Opaskar at all times were the named owners identified on *The Third Lady*'s title.  The parties have not indicated that any changes have been made to the title as a result of Frank's death or his estate's role.

3

### B. Procedural Background

On September 2, 2021, Gail Opaskar filed a petitory action under Rule D of the Federal Rules of Civil Procedure to try title to *The Third Lady*, contending that ownership had passed to South Shore Marine. *See* ECF Doc. 1. South Shore Marine answered the complaint and filed a cross-petition against *The Third Lady*, also under Rule D, to disclaim any ownership of the vessel. *See* ECF Doc. 11. The court permitted the estates of Kedas and his minor son to intervene. ECF Doc. 29. Following discovery, Christopher Kedas's estate and the individual parties filed motions for summary judgment. ECF Doc. 50, 51, 52. On review of the parties' motions, the court had concerns about its jurisdiction under Rule D, and ordered Opaskar, South Shore Marine, and Kedas to file supplemental briefs.

Additionally, both Opaskar and South Shore Marine have filed separate actions under Rule F to limit their liability, should they be found the "owner" of *The Third Lady*, for any claims arising from the vessel. *See* CM/ECF for Northern District of Ohio, Case Nos. 1:21-CV-02343 and 1:21-CV-02396. Those cases have been stayed, pending the resolution of this action.

### II. Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *Maben v. Thelen*, 887 F.3d 252, 258 (6th Cir. 2018). The moving party must demonstrate "the basis for its motion, and identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotation omitted). The nonmoving party may not simply rely on her pleadings but "must set forth specific facts showing that there is a genuine issue for trial."

4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation omitted); *see also Betkerur v. Aultman Hospital Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996) (The court does not have the responsibility to search the record *sua sponte* for genuine issues of fact). A reviewing court must determine whether the evidence that the nonmoving party relies upon "presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. In evaluating the evidence presented on a summary judgment motion, courts must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255. Nevertheless, a court need not accept unsupported or conclusory statements as true. *See Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009) ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment.").

### III. Law & Analysis

Opaskar contends that the court has admiralty jurisdiction, irrespective of Rule D's requirements, because ownership of a vessel is disputed. *See* ECF Doc. 63 at 1-3. South Shore Marine agrees with Opaskar, citing almost exclusively cases relevant to a different provision under the Supplemental Admiralty Rules.[1] *See* ECF Doc. 62 at 1-5. In contrast, Christopher Kedas's estate contends that the court lacks admiralty jurisdiction over the Opaskar's petition because the petition is based solely on an alleged contract for the sale of *The Third Lady*. ECF Doc. 61.

---

[1] Both parties cite case law relevant to proceedings under Supp Adm. Rule F, which governs limitation of liability actions; these cases are inapposite because Rule D and Rule F actions utilize different conceptions of "ownership" for their proceedings. *Compare Cary Marine v. Motovessel Papillon*, 701 F. Supp. 604, 606 (N.D. Ohio 1988) ("[A] party seeking to arrest a vessel under Rule D must have *legal* title or a legal claim to possession") (emphasis in original) *with Leco Corp v. Grams*, No. 91-1860, 1992 U.S. App. LEXIS 16252, at *7 (6th Cir. 1992) ("[T]he Supreme Court has made it clear that legal title is not determinative of ownership under the [Limitation of Liability Act].").

South Shore Marine's and Opaskar's supplemental briefs did not squarely address the court's core concern: the relationship between the title document, the purported trade-in agreement and the court's admiralty jurisdiction.  Regardless, the action presents two possible grounds for admiralty jurisdiction: first, if the purported trade-in agreement[2] is properly characterized as "maritime" in nature; or, second, if this is a valid petitory suit to "try title" to a vessel under Rule D.[3]  *See* 28 U.S.C. § 1333; *Gulf Coast Shell & Aggregate LP v. Newlin*, 623 F.3d 235, 239 (5th Cir. 2010); *Gonzalez-Santini v. Lucke*, No. 13-1375, 2013 U.S. Dist. LEXIS 97913, at *10 (D. P.R. July 12, 2013).  Because there is no diversity of citizenship between the parties, in the absence of admiralty jurisdiction, there would be no basis upon which the case could remain in federal court.

     A.     **Is the Purported Trade in Agreement a Maritime Contract?**

Although "[t]he boundaries of admiralty jurisdiction over contract [. . . ] have always been difficult to draw," to establish admiralty jurisdiction over a maritime contract, the contract must be one "which concerns transportation by sea, relates to navigation or maritime employment, or involves navigation and commerce on navigable waters."  *Sloop Silver Cloud*, 259 F. Supp. at 190 (internal quotation marks omitted); *see also Aquarius Aqua USA, Inc. v. M/Y Vogue/Jimbo*, No. 20-22281, 2021 U.S. Dist. LEXIS 190125, at *8-9 (S.D. Fla. Sept. 30, 2021).  As *Sloop Silver Cloud* indicates, merely incidentally discussing maritime activities is insufficient for a contract to be a "maritime contract"; "'there must be a direct and proximate juridical link between the contract and the operation of a ship. . . .'"  *J.A.R., Inc. v. M/V Lady Lucille*, 963 F.2d

---

[2] The parties dispute whether any contract was formed.  As discussed herein, the court need not decide that dispute to resolve the jurisdictional issue.
[3] Although Rule D is not, itself, a source of admiralty jurisdiction, it is subject to Fed. R. Civ. P. 9(h) and 28 U.S.C. § 1333, and thus, requires the existence of admiralty jurisdiction.  *See Turner v. One 2019 76 Foot Sunseeker Sport Yacht*, No. 19-62670, 2020 U.S. Dist. LEXIS 26092, at *9 (S.D. Fla. Feb. 13, 2020); *Silver v. Sloop Silver Cloud*, 259 F. Supp. 187, 190 (S.D. N.Y. Aug. 23, 1966).

6

96, 98 (5th Cir. 1992) (quoting *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538 (5th Cir. 1986) (internal quotation marks omitted)).

At its heart, Opaskar's argument is that she and her late husband no longer owned *The Third Lady* on the date of the accident because "ownership" had passed to South Shore Marine based on the trade-in agreement and various attendant circumstances (*i.e.*, inspections, notices, deposits, etc.). To the court's mind (setting aside for the moment any question as to whether a contract was actually formed) a trade-in agreement is analogous to a contract for sale. Looking at Opaskar's argument from this perspective, the rights created – or terminated – by the purported trade-in agreement are the heart of her petition. Neither party has successfully persuaded the court otherwise. Even if we assume that a contract was formed, the court must still determine whether that purported agreement was a maritime contract on which admiralty jurisdiction could be grounded. It was not.

> Opaskar argues that:
>
> Neither party seeks specific performance for the enforcement of that agreement or seeks damages for the alleged breach of that agreement. The agreement to purchase is not at the crux of the decision the Court must make in the context of Rule D. The question is: who was the owner of *The Third Lady* at the time of the June 23, 2021 marine casualty?

ECF Doc. 63 at 10. Although it is true that plaintiff does not seek to force South Shore Marine to take *The Third Lady* and cash in exchange for another vessel, the equivalent of specific performance of the purported trade-in agreement (via a declaration that the contract had been fully performed) is precisely what Opaskar seeks. This is so because she would impose the burden of ownership on South Shore Marine. To determine whether the agreement and all the attendant circumstances support that burden being placed on South Shore Marine, the court would be required to decide whether title passed via the partial performance of the purported

7

trade-in agreement. And disputes over contracts solely for the sale of a vessel are beyond the scope of admiralty jurisdiction because they are not maritime contracts. *See Richard Bertram & Co. v. The Yacht, Wanda*, 447 F.2d 966, 967 (5th Cir. 1971) ("[A] contract for the sale of a ship is not a maritime contract."). Put more plainly, "the breach of contract for the sale of a vessel is not a maritime contract and does not give rise to a maritime [remedies]." *See Polestar Mar. Ltd. v. Nanjing Ocean Shipping Co.*, 631 F. Supp. 2d 304, 307 (S.D. N.Y. 2009) (collecting cases from across the federal judiciary holding that "a contract for the sale of a ship is not maritime in nature"). Accordingly, even if the court were to find that the parties had formed an enforceable contract under which the Opaskars were to trade *The Third Lady* and cash for another vessel, the court would nevertheless lack jurisdiction over the action under a maritime contract theory. And, quite obviously, if the court were to find that no enforceable contract was formed, the court would obviously be forced to rule Opaskar's claim of maritime jurisdiction never left the dock.

There is no basis for a claim of admiralty jurisdiction in this action because the purported trade in agreement was not a maritime contract.

**B.     Is this a Proper Petitory Action to "Try Title" Under Rule D?**

Next, the court must decide whether it has jurisdiction under Supplementary Admiralty Rule D, which states:

> In all actions for possession, partition, and to try title maintainable according to the course of the admiralty practice with respect to a vessel . . . the process shall be by a warrant of arrest of the vessel, cargo, or other property, and by notice in the manner provided by Rule B(2) to the adverse party or parties.

Fed. R. Civ. P. Adm. Supp. R. D. Rule D provides the three identified grounds for exercising admiralty jurisdiction: (i) a titled owner may have a vessel arrested in order to seek possession; (ii) joint title owners may seek to have a vessel arrested so that their ownership interests can be partitioned; or (iii) a titled owner may bring a petitory action to "try title" to the vessel. Both

8

Opaskar and South Shore Marine characterize this as an action to "try title" to *The Third Lady*. Christopher Kedas disagrees.

"Suits to try title, known as petitory actions, are suits in which it is sought to try the title to a ship independently of any possession of the vessel." *Libbey v. Kosterlitz*, No. 2:18-CV-466-FTM-29CM, 2018 U.S. Dist. LEXIS 185525, at *2 (M.D. Fla. Oct. 30, 2018) (internal quotation marks omitted); *see also Nimbus Boat Rental, Corp. v. Angel Garcel*, No. 1:22-CV-22645, 2022 U.S. Dist. LEXIS 184890, at *17-18 (S.D. Fla. Oct. 7, 2022) (finding that the plaintiff's action was more appropriately brought under Rule D because plaintiff's sought to be named rightful title owner); *Privilege Yachting v. Teed*, 849 F. Supp. 298, 301 (D.C. Del. 1994) ("A petitory suit is an action to try title to a vessel. In order to bring petitory suit, the Plaintiff must assert legal title to the vessel. The assertion of equitable title alone is not sufficient.").

Despite inviting the parties to brief the jurisdictional issue, neither Opaskar nor South Shore Marine has identified a single case in which a person who held a certificate of title to a vessel sought to use Rule D to "try title" in a petitory action for the purpose of being declared *to not be the owner* of the vessel. The court's own research has not uncovered such a case either.

To exercise admiralty jurisdiction consistent with the petitory procedure in place under Rule D, "[a] plaintiff must claim [] legal title to the vessel". *See Nimbus Boat Rental, Corp.*, 2022 U.S. Dist. LEXIS 184890, at *17-18; *Turner*, 2020 U.S. Dist. LEXIS 26092, at *10 (quoting *Matsuda v. Wada*, 128 F. Supp. 2d 659, 669 (D. Haw. 2000)); *see also Gulf Coast Shell & Aggregate LP*, 623 F.3d at 239 (noting that a petitory action requires the assertion of legal title to the vessel). Here, both Opaskar and the South Shore Marine seek to utilize Rule D in an unprecedented manner: to *disclaim* rather than to *claim* ownership based on legal title. Based on the case law's emphasis that only one who *claims* legal title may initiate a petitory action under

9

Rule D, it is plain that South Shore Marine cannot use Rule D to "try title" to *The Third Lady*, because it disclaims rather than claims title. And even though Opaskar is undisputedly the holder of the Ohio certificate of title to the vessel, she does not seek to be declared the owner of the vessel based on a claim of title. Rather, she seeks a declaration that she is not the owner *despite* being the title holder. Because the parties do not come to court in a classical Rule D petitory action posture, and finding utterly zero case law to the contrary, the court finds that it lacks jurisdiction over the action because neither party seeks to "try title" based upon an assertion that it has legal title.

However, because is it undisputed that Frank and Gail Opaskar held a certificate of Ohio title to *The Third Lady* on the date of the accident, the court must nevertheless decide whether Opaskar – as the titled owner – may bring a petitory action to "try title" under Rule D for the purpose of *disclaiming* that title. Even if Rule D could be used in such an unprecedented manner, the court must reject Opaskar's attempt to "try title" to *The Third Lady*. Here, Opaskar claims she can "try title," not by proving that title passed to South Shore Marine not by the signing over of a certificate of title, but by proving that South Shore Marine's conduct reflected that it had the indicia of ownership[4]. Opaskar contends the court could rely on South Shore Marine's exhibition of the indicia of ownership to declare in a Rule D petitory action that there had been an equitable passage of title. The case law says otherwise.

The court in *Aquarius Aqua USA, Inc.*, 2021 U.S. Dist. LEXIS 190125, at *10, declined to exercise admiralty jurisdiction when the determination of the parties claims and defenses would have required the court, "to determine if, how, and when title transferred from Plaintiff to

---

[4] South Shore Marine, on the other hand, points to a litany of facts to support its argument that no contract had been formed, and demonstrating that Frank Opaskar was in complete command of the vessel – demonstrating his exhibition of the indicia of ownership – on and leading up to the date of the accident.

10

[the Defendant] under the purported purchase agreement." In *Privilege Yachting v. Teed*, 849 F. Supp. 298 (D. Del. 1994), the court rejected a claim of jurisdiction under Supp. Adm. Rules C and D, noting that, "[r]egardless of how Privilege characterizes this action, the dispute before the Court arises out of an agreement to construct a boat. There is nothing maritime about the parties' disagreement; it is nothing more than a contract dispute over the price, terms, and conditions of the contract to build the catamaran and the allegations that one or the other party has breached the contract." *Id.* at 301. And the court stated:

> To the extent that Plaintiff is claiming title to the vessel, it is only because Plaintiff and Defendant are arguing over the terms of the underlying construction contract. As the Court of Appeals for the Fifth Circuit stated in *J.A.R., Inc. v. M/V Lady Lucille*, 963 F.2d 96, 99 (5th Cir. 1992), "characterizing the dispute before us as a 'petitory' action for title apart from the underlying contract dispute so that it can become 'maritime' and bestow jurisdiction upon this court . . . is, to say the least, grasping."

*Id.* If these principles are fitted to the facts of the instant case, this court can readily observe that, to the extent Opaskar is *disclaiming* title to the vessel, it is only because Opaskar and South Shore Marine are arguing over the terms of the underlying purported trade-in agreement. Characterizing the dispute before us as a 'petitory' action to "try title" apart from the underlying contract dispute so that it can become 'maritime' and bestow jurisdiction upon this court is, to say the least, grasping. *See also Gulf Coast Shell & Aggregate LP*, 623 F.3d at 239 (noting that assertions of equitable interests in a vessel are insufficient to bring a petitory action under Rule D).

Accordingly, neither Opaskar nor South Shore Marine has demonstrated a right to invoke the admiralty jurisdiction of the court under either a maritime contract theory or under a claim that this is properly a petitory action under Rule D; thus, Opaskar's complaint and South Shore Marine's counterclaim must be dismissed. And because of that conclusion, there is nothing upon which summary judgment could be granted in favor of the Estate of Christopher Kedas; its

motion for summary judgment must be dismissed on mootness grounds. Finally, the court concurs with the position of the Kedas estate that dismissing this action in no way impairs the rights of Opaskar and South Shore Marine to assert their respective positions in their pending Rule F limitation of liability actions. It will simply be a different judge who decides whether the parties' efforts to disclaim ownership of *The Third Lady* or to limit their liability can float.

### IV. Conclusion

Because the court lacks admiralty jurisdiction over the action, Opaskar's (ECF Doc. 52), South Shore Marine's (ECF Doc. 50) motions for summary judgment are DENIED. And given that ruling, the Estate of Christopher Kedas's motion for summary judgment (ECF Doc. 51) is DISMISSED as MOOT. The action is DISMISSED with prejudice.

**IT IS SO ORDERED.**

Dated: June 13, 2023

Thomas M. Parker
United States Magistrate Judge